IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MELINDA MORA,                             §
                                          §
        Plaintiff,                        §
                                          §
v.                                        §           Civil Action No. 3:09-CV-0927-N
                                          §
UNIVERSITY OF TEXAS                       §
SOUTHWESTERN MEDICAL CENTER               §
                                          §
        Defendant.                        §

## ORDER

This Order addresses Defendant University of Texas Southwestern Medical Center's

("UT Southwestern") motion to dismiss [16] pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  For the reasons provided below, the Court grants UT Southwestern's

motion.

## I. ORIGINS OF UT SOUTHWESTERN'S MOTION TO DISMISS

This case arises out of UT Southwestern's alleged discrimination and retaliation

against Plaintiff Melinda Mora ("Mora") due to her substance and alcohol addiction.  The

parties dispute whether Mora states a plausible claim for relief under Title II and Title V of

the Americans with Disabilities Act,  42 U.S.C. § 12131, *et seq.*, and the Constitution.

Mora worked in UT Southwestern's Willed Body Program from 1996-2007.  In early

2007, she voluntarily initiated treatment for alcohol abuse through UT Southwestern's

Employee Assistance Program ("EAP").  Shortly thereafter, Mora alleges that representatives

of UT Southwestern's Human Resources and Employee Relations department forced her to

ORDER – PAGE 1

discuss treatment that she believed to be confidential.  On February 9, 2007, UT Southwestern terminated Mora's employment.  As a result, she could not complete treatment through the EAP, as she was no longer UT Southwestern's employee.  Additionally, Mora claims that UT Southwestern retaliated against her based on her disability by disparaging her and preventing her from obtaining employment in her field.

The Court dismissed Mora's original claims under Title I and Title V of the ADA because the Eleventh Amendment bars the Court from exercising jurisdiction.  *See* Order of Oct. 26, 2009 [13].  Now, in an amended complaint, Mora attempts to fit her claims into the framework of Title II of the ADA.  In addition, she alleges that UT Southwestern retaliated against her in violation of Title V and violated her Constitutional rights to privacy and equal protection.  UT Southwestern moves to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because (1) it is protected by sovereign immunity; and (2) Mora fails to state a plausible claim for relief.

## II.  STANDARD FOR DISMISSAL UNDER RULES 12(B)(6) AND 12(B)(1)

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a court may dismiss a case for "lack of jurisdiction over the subject matter."  FED. R. CIV. P. 12(b)(1). In deciding a jurisdictional challenge, the court may look beyond the complaint's jurisdictional allegations to determine if jurisdiction is present. That is, the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Raming v. United States*,

281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).  Whenever it appears by suggestion of the parties or otherwise that a court lacks jurisdiction over an action's subject matter, the court must dismiss the action. FED. R. CIV. P. 12(h)(3).

### *B. Rule 12(b)(6)*

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citations omitted).  To avoid dismissal for failure to state a claim, a plaintiff  must plead specific facts, not mere conclusory allegations.  *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

As the Supreme Court recently observed:

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."  FED. RULE CIV. PROC. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. MORA FAILS TO STATE A CLAIM FOR EXCLUSION FROM THE ACTIVITIES OF A PUBLIC ENTITY UNDER TITLE II OF THE ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any

such entity." 42 U.S.C. § 12132 (2000 ed.). A "disability" under the ADA is a "physical or mental impairment that substantially limits one or more of the major life activities of such individuals . . . or being regarded as having such an impairment." 42 U.S.C. § 12102(2). In the context of Title II, the Act defines a "'qualified individual with a disability'" as:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). UT Southwestern argues that Mora fails to state a plausible claim under Title II.[1] The Court agrees.

---

[1]UT Southwestern also argues that the Eleventh Amendment bars Mora's claims under Title II of the ADA because she does not suggest a violation of her Constitutional rights. In *United States v. Georgia*, the Supreme Court held that Title II of the ADA validly abrogates the Eleventh Amendment "insofar as [it] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." 546 U.S. 151, 159 (2006) (emphasis original). Thus, where a plaintiff raises a claim under Title II of the ADA that also suggests a violation of Constitutional rights, the case may proceed. *See, e.g.*, *Kemppainen v. Aransas County Det. Ctr.*, No. C-08-194, 2009 WL 68769, at *2 (S.D. Tex. Jan. 8, 2009); *Pitre v. David Wade Corr. Ctr.*, No. 06-1802, 2008 WL 466160, at *5 (W.D. La. Feb. 14, 2008). However, the Supreme Court "held open the question whether Congress's abrogation of sovereign immunity is valid with respect to conduct that arguably violates the ADA, but does not violate the Constitution." *Clark v. Livingston*, No. CC-08-45, 2009 WL 2827991, at *3 (S.D. Tex. Sept. 1, 2009) (citing *Georgia*, 546 U.S. at 159). The *Georgia* court suggested that lower courts would be best situated to determine on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such conduct also violated the [Constitution]; and (3) insofar as such misconduct violated Title II but did not violate the [Constitution], whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159. Because the Court holds that Mora fails to state a claim under Rule 12(b)(6), it need not consider UT Southwestern's sovereign immunity argument.

First, a careful review of Mora's Amended Complaint demonstrates that she was not eligible for the only program or service to which she alleges that UT Southwestern denied her access in violation of Title II.[2] In 2007, "Mora began receiving services for alcohol abuse through [UT Southwestern's] Employee Assistance Program ('EAP')." Am. Compl. at 4 [15]. "Mora was fired . . . on February 2009." *Id.* at 5. "UT Southwestern's written policies expressly provide for *employees* to go to the *Employee* Assistance Program for treatment." Pl.'s Letter Br. at 3 (emphasis added). Therefore, when UT Southwestern terminated her employment, she was no longer eligible to participate in EAP. Mora admits as much in her Amended Complaint: "[D]ue to [UT Southwestern's] termination of Plaintiff, Plaintiff was prevented from participating in the EAP." Am. Compl. at 7. Thus, Mora fails to state a plausible claim that she met the essential eligibility requirements for participation in the program.

Second, Mora fails to allege sufficient facts that support a plausible claim that she is an individual with a disability. Although she offers the conclusory statements that she has an "impairment" that "substantially limits her major life activities," she fails to identify any life activity that her alcoholism affects. *See* Am. Compl. Although Mora need not plead a prima facie case, she must provide grounds demonstrating an entitlement to relief that are more than labels and conclusions. *See Dark v. Potter*, 293 F. App'x 254 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 555; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 509-10

---

[2]Mora does not allege that her employment at UT Southwestern constituted a "service, program, or activity of a public entity." *See* Am. Compl.

(2002)); *see also Etheredge v. Senior Care Health and Rehabilitation Ctr.*, 2010 WL 1855941, at *3 (E.D. Tex. 2010) ("Plaintiff has not alleged substantial limitation of one or more of his major life activities. In fact, it is unclear to the Court exactly how Plaintiff was limited by his alleged disability."). For these reasons, the Court holds that Mora fails to state a claim for exclusion from the activities of a public entity under Title II of the ADA.

### IV. MORA FAILS TO STATE AN EMPLOYMENT DISCRIMINATION CLAIM UNDER TITLE II OF THE ADA

To the extent that Mora seeks to recover for alleged employment discrimination under Title II,[3] she fails to state a plausible claim. The Court holds that Title I of the ADA is the exclusive federal remedy for employment discrimination claims and, therefore, precludes employment claims under Title II.

The Fifth Circuit has yet to decide whether employment discrimination claims are cognizable under Title II of the ADA.[4] *See Eber v. Harris Cnty. Hosp. Dist.*, 130 F. Supp. 2d 847, 851 (S.D. Tex. 2001) ("[I]n this circuit, the availability of a cause of action for employment discrimination under Title II of the ADA remains open."). Courts across the

---

[3]It is not at all clear from the Complaint language whether Mora intends to allege an employment discrimination claim under Title II, separate and apart from her claim for exclusion from the EAP.

[4]In *Holmes v. Texas A&M University*, the Fifth Circuit assumed without deciding that an employment discrimination claim under Title II was cognizable. 145 F.3d 681, 683-84 (5th Cir. 1998). The court held that the plaintiff's claim was barred by the relevant statute of limitations. *Id.* at 685. Shortly thereafter, in *Decker v. University of Houston*, the Fifth Circuit acknowledged that the issues of "whether a claim for employment discrimination is cognizable under Title II and, if so, whether Title II requires exhaustion of the administrative remedies set out under Title I prior to the filing of a lawsuit" were "issues of first impression" in the circuit. 1998 WL 698920, at *9 (5th Cir. 1998).

nation are split over the issue. *Compare, e.g.*, *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 820 (11th Cir. 1998) (Title II permits an employment discrimination claim); *Skinner v. Salem Sch. Dist.*, 2010 WL 2488903, at *6 (D.N.H. 2010) (same); *Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.*, 342 F. Supp. 2d 160 , 175 (S.D.N.Y. 2004) (same); *Wagner v. Tex. A&M Univ.*, 939 F. Supp. 1297, 1310 (S.D. Tex. 1996) (same) *with Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1172-84 (9th Cir. 1999) (Title II does not apply to employment discrimination) *Fleming v. State Univ. of N.Y.*, 502 F. Supp. 2d 324, 334 (E.D.N.Y. 2007) (same); *Brettler v. Purdue Univ.*, 408 F. Supp. 2d 640, 660 (N.D. Ind. 2006) (same); *Decker v. Univ. of Houston,* 970 F. Supp. 575, 578 (S.D. Tex. 1997), *aff'd on other grounds*, 159 F.3d 1355 (5th Cir.1998) (same).

The Supreme Court has noted the circuit split, but has not resolved it. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 n.1 (2001). In *Garrett*, the Court declined to decide "whether Title II of the ADA, dealing with the 'services, programs, or activities of a public entity,' is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject." *Id.* (internal citation omitted). The Court then cited *Russello v. United Sates*, 464 U.S. 16, 23 (1983), for the proposition that where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* Various courts have interpreted this language and the Court's citation to *Russello* as an indication that it would not have allowed

employment discrimination claims to proceed under Title II. *See, e.g.*, *Brown v. Conn.*, 2010 WL 2220580, at *19 (D. Conn. 2010); *Fleming*, 502 F. Supp. 2d at 334; *Canfield v. Issacs*, 523 F. Supp. 2d 885, 889 (N.D. Ind. 2007); *Syken v. N.Y. Exec. Dep't, Div. of Housing & Cmty. Renewal*, 2003 WL 1787250, at *11 (S.D.N.Y. 2003). "While this dicta is of course not binding, it gives some indication as to where the Supreme Court, as it was constituted in year 2001, stood on the issue." *Canfield*, 523 F. Supp. at 889.[5]

*Bledsoe* and *Zimmerman*, the circuit court opinions that are directly on point, exemplify the competing perspectives on whether Title II covers employment discrimination. In *Bledsoe*, the Eleventh Circuit held that "employment coverage is clear from the language and structure of Title II." 133 F.3d at 822. In reaching its conclusion, the Court examined the language of Title II – "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2000 ed.). It held that the phrase at the end of the sentence – "or be subjected to discrimination by any such entity" – was a "catch-all phrase that prohibits all discrimination by a public entity, regardless of the context." 133 F.3d at 822 (quoting

---

[5]Additionally, in *Tennessee v. Lane*, the Supreme Court explained that the ADA covers "three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II, and public accommodations, which are covered by Title III." 541 U.S. 509, 516-17 (2004). At least one court has taken this descriptive language as a "fairly strong indication" that the Supreme Court would hold that Title II does not apply to employment. *Cormier v. City of Meriden*, 2004 WL 2377079, at *5-6 (D. Conn. 2004); *see Clifton v. Ga. Merit Sys.*, 478 F. Supp. 2d 1356, 1365 (N.D. Ga. 2007).

*Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 44- 45 (2d Cir. 1997)).  The court relied heavily on the statute's legislative history and on Title II's implementing regulations, in which the Department of Justice indicated that employment claims are actionable under Title II.  *Id.* at 821-22; *see* 28 C.F.R. § 35.140.

In *Zimmerman*, on the other hand, the Ninth Circuit held that Congress "unambiguously expressed its intent for Title II not to apply to employment" and, therefore, afforded no weight to agency regulations to the contrary.[6]  170 F.3d at 1173.  The Court examined the same statutory language and concluded that the phrase "services, programs, and activities" referred to agency outputs, not inputs such as employment.  170 F.3d at 1174 (citing *Decker*, 970 F. Supp. at 578).  Then, it determined that the catch-all phrase – "or be subjected to discrimination by any such entity" – related back to the phrase "services, programs, or activities," such that it applied only to discrimination in the outputs of a public agency.  In reaching its conclusion, the *Zimmerman* court looked to five structural components of the ADA:

> (1) Congress placed employment-specific provisions in Title I, which it labeled "Employment," whereas Congress placed no employment-related provisions in Title II, which it labeled "Public Services." (2) Congress defined "qualified individual with a disability" differently in Title I than in Title II. In Title I, a person is "qualified" if the person can work, whereas in Title II a person is "qualified" if the person is eligible to receive services or participate in a

---

[6]The *Zimmerman* court applied the two-step analysis described in *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984).  It held: " when viewed as a whole, the text, context and structure of the ADA show unambiguously that Congress did not intend for Title II to apply to employment.  Under these circumstances, we do not resort to legislative history, and we do not defer to the Attorney General's regulation."  170 F.3d at 1173.

publicly provided program. (3) Allowing employment discrimination claims under Title II would make Title I redundant as applied to public employees and would eviscerate the procedural requirements of Title I for those employees. (4) Congress gave regulatory authority to different agencies for Title I and Title II. Congress gave authority over Title I to the EEOC, the agency that administers most federal employment-related statutes. (5) Congress expressly linked the employment-related provisions of the Rehabilitation Act to Title I of the ADA, not to Title II.

*Id.* at 1776.

Many courts have relied on and expanded the reasoning in *Zimmerman* since it was decided. *See, e.g.*, *Brettler*, 408 F. Supp. at 660; *Fleming*, 502 F. Supp. 2d at 331-32; *Cormier*, 2004 WL 2377079 at *5-8. In *Cormier*, for example, the court elaborated on the remedies available under Titles I and II of the ADA. The court noted that while Title I requires a plaintiff to exhaust his administrative remedies, Title II – on its face – does not. *Cormier*, 2004 WL 2377079 at *7. Thus, applying Title II to employment claims would "render [Title I's exhaustion] requirement a nullity for a significant class of covered employees." *Id*. In addition, the *Cormier* court noted that Title I caps compensatory damages in accordance with an employer's size and Title II does not. *Id*. Thus, the *Cormier* court reached the same conclusion as the Ninth Circuit in *Zimmerman* and held that an employment discrimination claim is not cognizable under Title II of the ADA. *Id*. at *8.

After considering the divergent perspectives described above, the Court agrees with and adopts the analysis in *Zimmerman* and its progeny and holds that Title II of the ADA

does not apply to employment discrimination.[7]  Accordingly, the Court holds that Mora fails to state an employment discrimination claim under Title II of the ADA.

## V. MORA FAILS TO STATE A CLAIM UNDER TITLE V OF THE ADA

Title V of the ADA states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . ." 42 U.S.C. § 12203(a).  A claim of unlawful retaliation under the ADA requires a plaintiff to make a prima facie case by showing that (1) he or she engaged in an activity protected by the ADA, (2) he or she suffered an adverse employment action, and (3) there is a causal connection between the protected act and the adverse action.  *Seaman v. CSPH*, 179 F.3d 297, 301 (5th Cir. 1999).  Mora's allegations with respect to her Title V claim state, in their entirety:

> UTSWMC retaliated against Mora for exercising her rights under the ADA in violation of 42 U.S.C. § 12203(a).  These Title V retaliation claims are based on actions taken by UTSWMC in violation of Title II of the ADA.
> UTSWMC has disparaged and continues to disparage Mora to potential employers for whom Mora has sought to gain employment, and thereby prevented Mora from gaining employment with a Fort Worth hospital. Furthermore, UTSWMC's decision to terminate Mora was based in part on her complaints about UTSWMC's unwillingness to accommodate her disability limitations.

---

[7]The Fifth Circuit recently issued its opinion on rehearing in *Frame v. City of Arlington*., 616 F.3d 476 (5th Cir. 2010), *reh'g granted,* 2011 WL 242385 (5th Cir. 2011) (en banc).  There, the court considered whether sidewalks, curbs, and parking lots constituted "services, programs, or activities" under Title II.  It did not address the "or be subjected to discrimination" language of Title II.  *Id.* at *5.  *Frame* thus does not bear on the analysis here.

ORDER – PAGE 12

This is insufficient to state a plausible claim for relief. First, with respect to UT Southwestern's alleged "disparagement," Mora fails to allege that she engaged in any causally related protected activity. Second, Mora's claim that UT Southwestern decided to terminate her based on her complaints about its unwillingness to accommodate her disability is not plausible. The facts, as alleged in the Amended Complaint, indicate that UT Southwestern removed Mora from the EAP program *after* she was terminated. She identifies no unwillingness by UT Southwestern to accommodate her disability, and no "complaints" about such unwillingness, that occurred before UT Southwestern made its termination decision. Thus, her claim is not plausible on its face. The Court holds that Mora fails to state a claim for relief under Title V of the ADA.

UT Southwestern also argues that the Eleventh Amendment bars Mora's claims under Title V of the ADA. In *Garrett*, the Supreme Court held that Congress's attempted abrogation of state immunity exceeded its powers under Section 5 of the Fourteenth Amendment with respect to Title I of the ADA because the remedies provided by the statute were disproportionate to the injury to be prevented. *Garrett*, 531 U.S. at 363, 374-76. Faced with the issue of whether *Garrett's* reasoning extends to Title V retaliation claims based on alleged employment discrimination, the Ninth Circuit held:

> There is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled. Absent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims.

*Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001).  This Court, like the court in *Shabazz v. Texas Youth Comm'n*, finds the reasoning of *Demshki* persuasive.  *See* 300 F. Supp. 2d 467, 472-73 (N.D. Tex. 2003).  However, the Court need not decide whether sovereign immunity bars Mora's Title V claims because she fails to state a plausible claim under Rule 12(b)(6).

## V. MORA FAILS TO STATE A CLAIM UNDER THE CONSTITUTION

It is unclear whether Mora intends to pursue a separate claim for violation of her Constitutional rights.  Her Amended Complaint states:

> Due to UTSWMC's discriminatory and retaliatory actions based on Mora's disability, Mora's Federal Constitutional rights were violated. Mora's right to privacy and rights under the Equal Protection Clause were each violated due to unequal treatment and revelation of her confidential personal information by UTSWMC.

Compl. at 8.  To the extent that she seeks relief under 42 U.S.C. § 1983,[8] Mora's claim against UT Southwestern must be dismissed because a state agency is not a "person" against whom she may recover money damages under the statute.  *See Will v. Michigan State Dep't of Police*, 491 U.S. 58, 71 & n. 10 (1989); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007).

---

[8]"Section 1983 is the proper vehicle for a claim alleging that a state official has violated the Plaintiffs' rights under the Fourteenth Amendment."  *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 480 F.3d 734, 739 (5th Cir. 2007).

## CONCLUSION

For the reasons provided above, the Court grants UT Southwestern's motion to dismiss.

Signed February 10, 2011.

David C. Godbey
United States District Judge